Devin A. McRae, State Bar Number 223239
  *dmcrae@earlysullivan.com*
Peter Scott, State Bar Number 247786
  *pscott@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Plaintiffs
DAVID RATH and KARA WELKER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RATH and KARA WELKER,<br><br>    Plaintiffs,<br><br>vs.<br><br>DEFY MEDIA, LLC, a Delaware limited liability company; MATTHEW DIAMOND, an individual; KEITH RICHMAN, an individual; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No.:  2:18-cv-09624<br><br>**COMPLAINT** |

**COMPLAINT**

Plaintiffs David Rath and Kara Welker hereby allege as follows:

**PARTIES**

1. Plaintiff David Rath is, and at all relevant times hereto was, a citizen of the County of Los Angeles, State of California.

2. Plaintiff Kara Welker is, and at all relevant times hereto was, a citizen of the County of Los Angeles, State of California.

3. Defendant Defy Media, LLC is, and at all relevant times hereto was, a Delaware limited liability company with its principal place of business in New York City, New York. Upon information and belief, all of Defy Media, LLC's members are citizens of the State of New York, Delaware and/or Connecticut.

4. Defendant Matthew Diamond is the Chief Executive Officer of Defy Media and is, and at all relevant times hereto was, a citizen of the County of Fairfield, State of Connecticut.

5. Defendant Keith Richman is the President of Defy Media and is, and at all relevant times hereto was, a citizen of the County of Suffolk, State of New York.

6. Plaintiffs are ignorant of the true names and capacities of defendants named herein as Does 1 through 20, inclusive. Plaintiff is informed and believes, and thereon alleges that does 1 through 20 are liable, in whole or in part, for the claims asserted in this Complaint against the Defendants. When Plaintiff learns the true identities and capacities of Does 1 through 20, Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of Does 1 through 20.

7. Plaintiffs are informed and believe and thereon allege that at all relevant times, each defendant was the principal, agent, or employee of each other defendant, and acted within the scope of that relationship.

1
**COMPLAINT**

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this dispute and over this action pursuant to 28 U.S.C. § 1332. There is a complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs.

9. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a) because, among other things, a substantial part of the events, omissions, transactions, occurrences and/or damages giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

10. Plaintiffs David Rath and Kara Welker owned and operated talent agency Generate Holdings, Inc. and its related subsidiaries (collectively, "Generate"). As a broad overview, Generate's business operated by managing and placing its roster of clients in entertainment or commercial projects, collecting the revenues due to said clients, taking a small management fee and remitting the remainder to the appropriate parties, including without limitation the respective client. To safeguard these client funds, Plaintiffs were careful to have the funds deposited in a segregated and protected client trust account.

11. In or about 2011, the assets and outstanding membership interests of Generate were purchased by AdGen, LLC. Plaintiffs are informed and believe that AdGen, LLC is a wholly owned subsidiary of Alloy Digital, LLC. Plaintiffs then became employees of Alloy Digital each pursuant to a separate written Employee Covenants Agreement. Plaintiffs also became equity holding members of Alloy Digital Management, LLC each pursuant to a separate written Equity Incentive Letter Agreement. Alloy Digital Management, LLC is the separate management arm of the Alloy Digital related family of companies, including AdGen, LLC and Generate. Plaintiffs are informed and believe that Defendants Diamond and Richman are also equity holding members of Alloy Digital Management, LLC.

12. In or about 2013, Alloy Digital was merged into the entity Defendant Defy Media, LLC, which was a joint venture between Alloy Digital and Break, Inc. Defy Media assumed the obligations under Plaintiffs' respective Employee Covenants Agreement and Equity Incentive Letter Agreement.

13. Plaintiffs continued to operate Generate and continued to utilize the Generate name and trademarks, just as they had previously done, but now under the umbrella of Defy Media.

14. After merging with Alloy Digital and Defy Media, certain accounting functions previously performed by Plaintiffs were assumed by Defy Media personnel. Among these accounting functions assumed by Defy Media were the collection of fees generated by Plaintiff's/Generate's roster of clients and the remittance of those fees to the respective clientele after deducting the appropriate management fee.

15. Beginning in approximately 2017, Plaintiffs commenced discussions with Defendants about extricating Plaintiffs and Generate from the Defy Media umbrella so that Plaintiffs could operate their business (either through Generate or a subsequent company) independently of a parent company. Plaintiffs requested from Diamond and Richman that Defy Media spin off Generate and/or Plaintiffs so as to effectuate a separation/divorce between Defy Media and Plaintiffs. Plaintiffs also requested that Defendants provide them with a profit and loss statement on their business operations for at least the prior 12 months.

16. Diamond and Richman responded with assurances that they were working on a plan for separation so as to achieve Plaintiffs' aim of operating their business independently, but needed a bit more time to ensure the transition went as smoothly as possible. Diamond and Richman also responded that they were working on putting together the requested financial information and would be able to have it to Plaintiffs shortly. Diamond and Richman also promised and orally agreed that they would cause Defy Media or themselves individually to pay

3
**COMPLAINT**

Plaintiffs increased salary, compensation and bonuses through the end of 2018 totaling at a minimum over $100,000 each as pro-rated through the end of 2018, as an incentive to have Plaintiffs stay with Defy Media until an exit strategy could be arranged.

17. Plaintiffs are informed and believe that Diamond and Richman knew or should have known that these representations were false when made and that neither Diamond nor Richman had any intention of putting together a separation plan for Plaintiffs or paying Plaintiffs any of the promised salary, compensation and bonuses and merely made these misrepresentations in order to keep Plaintiffs under the Defy Media umbrella so as to book their revenue and artificially inflate Defy Media's accountings for use in obtaining additional emergency financing for Defy Media or a sale of the company. Plaintiffs are also informed and believe that neither Diamond nor Richman had any intention of providing Plaintiffs with the requested financial information, as such would have alerted Plaintiffs to the true state of Defy Media's business operations and would have hastened Plaintiffs departure.

18. As a result of these assurances and in the hopes of working out a mutually agreeable separation, Plaintiffs were lulled into not immediately unilaterally terminating their relationship with Defy Media and separating on their own accord.

19. Suddenly, with no prior notice, on November 6, 2018, Defendants notified Plaintiffs that Defy Media was ceasing all further operations. While the notice stated that the Defy Media would be shut down effective January 2, 2018, in order to comply with the WARN Act, Defendants failed to abide by this and simply shut down the company immediately.

20. Plaintiffs were thus left to scramble to continue servicing their existing clients but with no infrastructure or equipment to do so – all of which was still tied up with Defy Media. Plaintiffs also learned that Defy Media continued to hold

approximately $200,000 that was due to Plaintiffs' clients. However, to Plaintiffs dismay, they discovered that Defy Media had simply placed this $200,000 into its general operating account – not in a protected, segregated client trust account. These client funds are now subject to the claims of Defy Media's many creditors and may be tied up in a bankruptcy proceeding.

21. Plaintiffs are informed and believe that Diamond and Richman deliberately placed these client funds in Defy Media's general operating account instead of in the proper client trust account in order to artificially inflate the revenues and assets of Defy Media to make the company seem more attractive for either further financing or sale.

22. Due to Defendants' conduct as described above, Plaintiffs must fund out of their own pocket numerous business costs to continue servicing their clients and continue their business operations. Had Plaintiffs been advised of the true state of Defy Media's business and finances (and the same not fraudulently concealed from them) and had Plaintiffs not reasonably relied on Diamond and Richman's fraudulent misrepresentations about developing an exit strategy for Plaintiffs, Plaintiffs would have immediately implemented an exit from Defy Media's umbrella in a more efficient and cost-effective manner and/or would have located another company to absorb and incorporate Plaintiff's business and talent roster. Plaintiffs are now left to fund their business operations out of their own personal pockets and to engage in merger or buy-out discussions with potential suitors on a rushed basis and for a likely worse deal than they otherwise could have obtained but for Defendants' fraudulent misrepresentations.

///
///
///
///
///

5
COMPLAINT

## FIRST CAUSE OF ACTION

### (Fraud – Against All Defendants)

23. Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

24. Defendants committed actionable fraud against Plaintiffs by way of affirmative misrepresentations and concealments of material facts as alleged in detail in the preceding paragraphs.

25. Defendants made the foregoing misrepresentations and concealments despite being aware of their falsity.

26. Plaintiffs reasonably and actually relied upon Defendants' misrepresentations and concealments.

27. As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, damages in an amount to be proven at trial.

28. Defendants' acts were undertaken intentionally and in conscious disregard of Plaintiffs' rights. In addition, Defendants' acts were malicious, oppressive, and/or fraudulent. Plaintiffs should be awarded punitive and exemplary damages sufficient to punish Defendants and deter similar future conduct.

## SECOND CAUSE OF ACTION

### (Breach Of Oral Agreement – Against All Defendants)

29. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

30. Defendants orally agreed to pay Plaintiffs increased salary, compensation and bonuses through the end of 2018 totaling at a minimum over $100,000 to each Plaintiff as pro-rated through the end of 2018, as an incentive to have Plaintiffs stay with Defy Media until an exit strategy could be arranged.

///
///
///

31. Plaintiffs relied upon this oral agreement and stayed with Defy Media until Defy Media's sudden cessation of business operations. Except as otherwise excused or prevented, Plaintiffs performed all material conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the oral agreement.

32. Through their actions as set forth in detail above, Defendants have materially breached the oral agreement.

33. As a direct and proximate result of Defendants' material breaches, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Breach Of Fiduciary Duty – Against Diamond and Richman)

34. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

35. Defendants Diamond and Richman owed fiduciary duties to Plaintiff, including duties of utmost loyalty, due care, disclosure, good faith and fair dealing.

36. By the conduct alleged herein, Defendants Diamond and Richman repeatedly breached their fiduciary duties to Plaintiffs.

37. As a direct and proximate result of Defendants Diamond and Richman's breaches of fiduciary duty, Plaintiffs have suffered damages in an amount to be proven at trial.

38. Defendants Diamond and Richman's acts were undertaken intentionally and in conscious disregard of Plaintiffs' interests and rights. Moreover, Defendants Diamond and Richman's acts were malicious, oppressive, and/or fraudulent. Therefore, Plaintiffs should be awarded punitive and exemplary damages sufficient to punish Defendants and to deter similar conduct in the future.



## FOURTH CAUSE OF ACTION

### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing—Against All Defendants)

39. Plaintiffs reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

40. Plaintiffs and Defy had a contractual relationship through the respective Employee Covenants Agreement and Equity Incentive Letter Agreement.

41. Plaintiffs did all or substantially all of the significant things required of them under the agreements, except insofar as any such obligations have been prevented, excused or waived by the conduct of Defendants.

42. Defendants have unfairly interfered with Plaintiffs' rights to receive the benefits of the aforementioned agreements, by among other things, taking the actions described above.

43. As a direct and proximate result of Defendants' ongoing breaches and conduct, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Negligence – Against All Defendants)

44. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

45. By virtue of the relationship that existed between Plaintiffs and Defendants, Defendants owed Plaintiffs a duty of care to use such skill, prudence, and diligence as other similarly situated professionals commonly possess and exercise.

46. For the reasons set forth above, Defendants and each of them failed to exercise reasonable care and skill in undertaking to manage the business affairs between Plaintiffs and Defendants in breach of their duty to exercise reasonable care and skill in such endeavors.

47. Had Defendants and each of them exercised proper care and skill in the foregoing matters, Plaintiffs would not have incurred the damages that they did incur.

48. As a proximate result of such negligence, Plaintiffs were actually damaged in an amount to be proved at trial, but which exceeds the jurisdictional minimum of this court.

## SIXTH CAUSE OF ACTION

**(Accounting – Against Defendant Defy Media)**

49. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

50. As set forth more fully above, a fiduciary relationship existed between Plaintiffs and Defendants, and a balance is due Plaintiffs and potentially Plaintiffs' third party clients that can only be ascertained by an accounting.

## SEVENTH CAUSE OF ACTION

**(Equitable And/Or Implied Indemnity – Against All Defendants)**

51. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

52. Defendants' actions as described herein have resulted in Plaintiffs being the subject of potential claims brought by Plaintiffs' third party clients with respect to monies owed but retained by Defy Media and Plaintiffs being compelled to engage qualified professionals to represent them in connection therewith.

53. Plaintiffs have already expended monies for the professional service fees for the above-referenced professionals and will continue to be required to pay these fees until the issues are resolved.

54. Further, in the event that the aforementioned audits result in the payment of any judgment or damages, such amounts are the result of and caused solely by the acts and/or omissions of Defendants.



9
**COMPLAINT**

55. Accordingly, based on the principals of total and/or equitable and/or implied indemnity and/or comparative fault, Defendants (and each of them) is obligated to fully or partially indemnify Plaintiffs for any sums Plaintiffs have been or may be required to pay as a result of the aforementioned claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. For compensatory and/or restitutionary damages in a sum according to proof;
2. For exemplary and punitive damages;
3. For preliminary and permanent injunctive relief;
4. For complete or partial indemnity in a sum according to proof;
5. For an accounting;
6. For attorneys' fees and costs;
7. For pre-judgment interest;
8. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 14, 2018		EARLY SULLIVAN WRIGHT
				GIZER & McRAE LLP


By: *Devin A. McRae*
     Devin A. McRae
     Peter Scott
     Attorneys for Plaintiffs