O

# United States District Court
# Central District of California

| | |
|---|---|
| DAVID RATH and KARA WELKER,<br><br>Plaintiffs,<br><br>v.<br><br>DEFY MEDIA, LLC, a Delaware limited liability company; MATTHEW DIAMOND, an individual; KEITH RICHMAN, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:18-cv-09624-ODW (RAOx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFY MEDIA, LLC [18]** |

## I.  INTRODUCTION

Presently before the Court is Plaintiffs David Rath and Kara Welker's ("Plaintiffs") Motion for Default Judgment ("Motion") against Defendant Defy Media, LLC ("Defy Media"). (ECF No. 18.) For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment and awards Plaintiffs **$100,000**.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs owned and operated Generate Holdings, Inc. ("Generate"), a talent agency in which they managed clients. (Compl. ¶ 10, ECF No. 1.) Generate placed its clients in entertainment and commercial projects and collected the revenues due to the clients. (*Id.*) Plaintiffs placed the funds owed to the clients into a segregated and protected client trust account. (*Id.*) Plaintiffs allege at some point in 2011, AdGen, LLC, a wholly owned subsidiary of Alloy Digital, LLC, purchased Generate. (*Id.* ¶ 11.) Approximately two years later, Alloy Digital, LLC merged into the entity Defy Media, LLC. (*Id.* ¶ 12.) Plaintiffs allege that as a result of the merger, Defy Media assumed the obligations set forth under Plaintiffs' respective Employee Covenants Agreement and Equity Incentive Letter Agreement. (*Id.*) Defy Media personnel assumed certain accounting functions Plaintiffs performed, including the collection of Plaintiffs' client revenue and management fees. (*Id.* ¶ 14.)

In 2017, Plaintiffs discussed with Defy Media through its agents, Defendants Matthew Diamond ("Diamond") and Keith Richman ("Richman"), the possibility of extricating Generate from Defy Media so that Plaintiffs could operate Generate independently. (*Id.* ¶ 15.) Diamond is Defy Media's CEO, and Richman is Defy Media's President. (*Id.* ¶¶ 4–5.) Both are alleged to be the principal, agent, or employee of Defy Media and to have acted within the scope of that relationship at all relevant times. (*Id.* ¶ 7.) Defendants[2] assured Plaintiffs that they were working to extricate Generate but needed more time to ensure a smooth transition. (*Id.* ¶ 16.) Defendants promised to pay Plaintiffs additional compensation through 2018, totaling at least $100,000, to incentivize Plaintiffs to remain with Defy Media until an exit strategy materialized. (*Id.*) Plaintiffs allege that Defendants made these representations knowing that it did not intend to help Plaintiffs extricate Generate nor pay Plaintiffs the increased compensation they promised, and that Defendants

---

[2] Defy Media, LLC, Diamond, and Richman are collectively referred to as "Defendants."

purposefully kept Plaintiffs in the dark about the true state of its business operations. (*Id*. ¶ 17.) This was because Defendants wanted Plaintiffs and Generate's revenue under Defy Media's umbrella for as long as possible to artificially inflate its account. (*Id*. ¶¶ 17, 21, 22.)

Without notice, Defendants notified Plaintiffs that Defy Media was ceasing all operations on November 6, 2018. (*Id*. ¶ 19.) Plaintiffs were required to continue servicing their clients without infrastructure or equipment, while Defy Media continued to hold around $200,000 that was due to Plaintiffs' clients. (*Id*. ¶ 20.) Defendants did not place this money into a separate client trust account but rather in Defy Media's general operating account. (*Id.*)

As a result of Defendants' fraudulent conduct, Plaintiffs are seeking $100,000 in compensatory damages, $300,000 in punitive damages, as well as recovery of Generate's email server and its contents, the telephone numbers associated with Generate, and all trademarks and copyrights pertaining to the Generate trade name and logos. (Mot. 9–11.)

Plaintiffs filed their Complaint on November 14, 2018. (*See generally* Compl.) Defy Media was served pursuant to Federal Rule of Civil Procedure 4(e) on November 27, 2018. (Proof of Service, ECF No. 12.) After Defy Media's failure to answer the Complaint, Plaintiffs filed a Request to Enter Default against Defy Media on December 20, 2018. (Req. for Entry of Default, ECF No. 15.) The Clerk entered default against Defy Media on December 21, 2018. (ECF No. 17.) Plaintiffs moved for default judgment on April 5, 2019. (Mot.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b), a court may grant default judgment after the Clerk enters default under Rule 55(a). *See PepsiCo Inc., v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider

several factors, including: the possibility of prejudice to plaintiff; the merits of plaintiff's substantive claim; the sufficiency of the complaint; the sum of money at stake; the possibility of a dispute concerning material facts; whether the defendant's default was due to excusable neglect; and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). If the allegations sufficiently establish liability, the court must then determine the "amount and character" of the relief that should be awarded. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

## IV. DISCUSSION

### A. Procedural Requirements

Before a court can enter default judgment, the requesting party must satisfy the procedural requirements set forth in Fed. R. Civ. P. 55, as well as the Local Rules of this district. *PepsiCo*, 238 F. Supp. 2d at 1174. Central District of California Local Rule 55-1 requires the movant to submit a declaration establishing: (1) when and against whom the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, an incompetent person, or exempt under the Servicemembers Civil Relief Act; and (4) that the defaulting party was served with notice, if required by Fed. R. Civ. P. 55(b)(2). *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014); C.D. Cal. L.R. 55-1.

In accordance with Fed. R. Civ. P. 55 and Local Rule 55-1, the Court finds that the procedural requirements are satisfied. The Clerk of the Court entered default against Defy Media on December 21, 2018. (ECF No. 17.) The default was entered as requested by Plaintiffs as to their November 14, 2018 Complaint. (ECF No. 15.)

Defy Media is neither a minor nor an incompetent person, and is not exempt under the Servicemembers Civil Relief Act. (Decl. of Peter D. Scott in Supp. of Pls.' Req. for Entry of Default ¶¶ 5–6, ECF No. 15-1.) Finally, Defy Media has not appeared in this action, and as such, notice of default judgment is unnecessary under Rule 55(b)(2), as referenced by Local Rule 55-1(e). (*Id*. ¶ 3–4.) Accordingly, the Court finds that Plaintiffs have complied with all procedural requirements.

### B. Plaintiffs' Motion for Default Judgment

The Court finds that the *Eitel* factors favor default judgment. The Court will address each factor in turn.

#### 1. First *Eitel* Factor: Plaintiffs Would Suffer Prejudice if Default is Not Entered

The first *Eitel* factor considers whether Plaintiffs will suffer prejudice if default judgment is not entered. *PepsiCo*, 238 F. Supp. 2d at 1177. When a defendant fails to appear and defend the claims against it, the plaintiff would be without recourse and suffer prejudice unless default judgment is entered. *Id*.

Given Defy Media's failure to defend this suit, Plaintiffs would be prejudiced if denied a remedy against Defy Media. As a result, the first *Eitel* factor weighs in favor of entering default judgment.

#### 2. Second and Third *Eitel* Factors: Plaintiffs' Claims are Meritorious and Sufficiently Pleaded

The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims pleaded in the Complaint. *Eitel*, 782 F.2d at 1471–72. Plaintiffs are only seeking default judgment for the causes of action as to Defy Media and intend to dismiss the Fifth Cause of Action for Negligence and Seventh Cause of Action for Equitable and/or Implied Indemnity without prejudice. (Mot. 9.)

##### i. First Cause of Action: Fraud

Under California law, the elements of fraud consist of the following: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2)

knowledge of falsity; (3) intent to defraud, (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Under Fed. R. Civ. P. 9(b), a claim of fraud must be pleaded with particularity, although malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). A plaintiff sufficiently pleads a claim of fraud by setting forth the "who, what, when, where, and how" of the misconduct. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Here, Defy Media, through Diamond and Richman, intentionally misrepresented assurances to Plaintiffs to delay Plaintiffs from leaving Defy Media's umbrella of companies. (Compl. ¶ 17; Declaration of David Rath in support of Motion for Def. J. ("Rath Decl.") ¶ 11; Declaration of Kara Welker in support of Motion for Def. J. ("Welker Decl.") ¶ 12.) Beginning in approximately 2017, Defendants told Plaintiffs that it was working on a plan to extricate Generate to help Plaintiffs achieve their goal of operating their business independently, but that it needed a bit more time to ensure smooth transition. (Compl. ¶¶ 15–16.) Defendants assured Plaintiffs that it was putting together the financial information that Plaintiffs requested, and that it would pay Plaintiffs increased compensation through the end of 2018 totaling at a minimum of $100,000. (*Id.*; Welker Decl. ¶ 10.)

Plaintiffs justifiably relied on Defendants' representations to their detriment, as they delayed their departure from Defy Media's umbrella of companies based on Defendants' statements. (Compl. ¶ 17–18; Rath Decl. ¶ 9; Welker Decl. ¶ 10.) Had Plaintiffs received the requested financial information, they would have discovered the true state of Defy Media's business and departed from Defy Media earlier. (*Id.*) Plaintiffs have suffered from Defendants' fraudulent misrepresentations because the promised compensation has not been paid, and Defy Media continues to hold onto approximately $200,000 due to Plaintiffs' clients. (Compl. ¶ 20; Rath Decl. ¶ 12; Welker Decl. ¶ 13.) Plaintiffs were forced to continue servicing their clients upon

Defy Media's sudden shutdown by paying out of their own pocket. (*Id.*) As such, Plaintiffs have sufficiently pleaded with particularity a meritorious claim of fraud. *See Burtscher v. Moore*, No. 11-02309 DMG, 2013 WL 121267761, at *1–9 (C.D. Cal. May 10, 2013) (holding that the plaintiffs established a fraud claim where they alleged the defendants mispresented facts of an agreement with no intention to perform, and that the plaintiffs were induced to enter into the agreement and were damaged as a result).

### ii. Second Cause of Action: Breach of Oral Agreement

To prove breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) his or her performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) damages. *West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The elements of a breach of oral contract are the same as those for a breach of written contract. *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014). However, the oral contract at issue must be analyzed to determine whether it runs afoul of the statute of frauds.

### a. Statute of Frauds

California Civil Code section 1624(a) states that "[a]n agreement that by its terms cannot be performed within a year from the making thereof [is] . . . invalid unless [the agreement], note or memorandum is in writing and subscribed to the party to be charged or by his agent." Cal. Civ. Code § 1624(a). The California Supreme Court has ruled the applicability of the statute of frauds must be analyzed prospectively, based on the intentions of the parties and the terms of the agreement at the time it is made. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 383 n.18 (Cal. 1988). However, given that the agreement was initially negotiated sometime in 2017, and was expected to run through 2018, it appears that the contract could not be completed in one year, and as such, the oral contract falls within the statute of frauds. Thus, absent exception the oral contract is invalid.

California Commercial Code § 1103(b) states, "Unless displaced by the particular provisions of this code, the principles of law and equity, including . . . estoppel . . . supplement its provisions." Thus, estoppel provides "one further exception to imposition of the statute of frauds." *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 442 (1988). The California Supreme Court has explained the doctrine as follows:
> The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute.

*Monarco v. Lo Greco*, 35 Cal. 2d 621, 623–24 (1950) (internal citations omitted). Thus, to invoke promissory estoppel as an exception to the statute of frauds, the plaintiff must establish one or both of the following: (i) the plaintiff, in reliance on an oral agreement, has "*seriously*" changed its position such that "*unconscionable injury* would result from denying enforcement of the oral contract"; and/or (ii) the defendant, having accepted the benefits under the oral contract, would be unjustly enriched by non-enforcement. *Isaac v. A&B Loan Co.*, 201 Cal. App. 3d 307, 313 (1988) (emphasis in original).

Here, both requisite conditions are met, because Plaintiffs changed positions and lost substantial financial gains by remaining within Defy Media's umbrella due to promised compensation, and permitting Defy media to retain ill-gotten gains is tantamount to unjust enrichment. Accordingly, the estoppel exception to the statute of frauds applies, and the oral contract is enforceable.

Having determined that the oral contract is enforceable, the Court continues its contractual analysis. Under California law, "a contract will be enforced if it is sufficiently definite for the court to ascertain the parties' obligations and to determine

whether those obligations have been performed or breached." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1143 (N.D. Cal. 2013). Here, Plaintiffs had an oral agreement with Defy Media indicating it would pay Plaintiffs increased compensation and bonuses through the end of 2018 totaling at least $100,000 to incentivize Plaintiffs to remain with Defy Media longer while an exit plan was arranged. (Compl. ¶ 16; Welker Decl. ¶ 10.) Plaintiffs' acceptance of this agreement is reflected by their remaining with Defy Media until its sudden cessation of business operations in November 2018. (Compl. ¶¶ 18–19; Rath Decl. ¶¶ 9–10; Welker Decl. ¶¶ 10–11.)

Defy Media breached the contract by neglecting to pay Plaintiffs the agreed upon increased compensation and bonuses. (Rath Decl. ¶¶ 11; Welker Decl. ¶¶ 12.) Defy Media's breach resulted in damage to Plaintiffs who have not received the consideration it agreed to provide in exchange for Plaintiffs' performance. (*Id.*) Accordingly, Plaintiffs have sufficiently pleaded a meritorious claim for breach of oral contract. *See Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, No. 12-0945 AJB (MDD), 2013 WL 2248140, at *6 (S.D. Cal. May 20, 2013) (upholding a claim for breach of oral contract where the plaintiff alleged an oral contract existed, the plaintiff performed his obligations under it, and the defendant breached).

### iii. Fourth Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing exists in every contract, and exists to prevent one party from unfairly frustrating the other party's rights to receive the benefits of the agreement. *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 963 (C.D. Cal. 2007). A breach of implied covenant involves something more than breach of the contractual duty itself. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of

action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395. There are three exceptions to this rule: (1) where a breach of a consensual contract claim is not alleged, (2) where the plaintiff is seeking recovery in tort, and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits. *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citations omitted).

Here, the third exception applies. Plaintiffs allege that Defy Media not only breached the oral contract, but also that it took actions in bad faith to frustrate the benefits of the contract. Specifically, Plaintiffs claim that Defy Media intentionally delayed its performance under the parties' agreement. Defy Media then suddenly and without prior notice completely ceased its business operations, depriving Plaintiffs of the benefit of the contract—namely, the $100,000 it promised to pay Plaintiffs. (Compl. ¶¶ 17, 19–21; Rath Decl. ¶¶ 10–11; Welker Decl. ¶¶ 11–12.) Accordingly, this Court finds that Plaintiffs have sufficiently pleaded a meritorious claim for breach of the covenant of good faith and fair dealing. *See Walt Disney Co.*, 347 F. Supp. 2d at 853 (holding that a plaintiff's claim of the implied covenant of good faith and fair dealing is distinguished from and not superfluous to a breach of contract claim if the defendant's actions "allegedly taken in bad faith, frustrated the *actual* benefits of the contract").

### iv. Sixth Cause of Action: Accounting

"An accounting is a 'species of disclosure, predicated upon the plaintiff's legal inability to determine how much money, if any, is due.'" *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 180 (2009). A plaintiff establishes a sufficient claim for accounting by alleging (1) the existence of a relationship which requires an accounting, and (2) that some unascertained balance is owed. *Id.* at 179; *Whann v. Doell*, 192 Cal. 680, 684 (1923).

Here, Plaintiffs allege a relationship sufficient to satisfy the first element of the cause of action. *Teselle*, 173 Cal. App. 4th at 179 (stating that a right to an accounting

can exist solely from possession by the defendant of money which, because of the parties' relationship, the defendant is obliged to surrender). Specifically, as Plaintiffs and Generate operated under Defy Media's umbrella, Defy Media assumed accounting functions including the collection of fees generated by Plaintiffs' clients and the remittance of those fees to the clients after deducting management fees. (Compl. ¶ 14; Rath Decl. ¶ 6; Welker Decl. ¶ 6.) Therefore, a relationship existed in which Defy Media possessed and managed Plaintiffs' money on behalf of Plaintiffs' clients. The second element of the cause of action is satisfied as Plaintiffs have alleged that Defy Media collected and dispersed fees and earnings generated by their clients during the five years Plaintiffs operated under Defy Media's umbrella. (*Id.*) Accordingly, the Court finds that Plaintiffs have sufficiently pleaded a meritorious claim for an accounting, and the second and third *Eitel* factors weigh in favor of granting default judgment on all causes of action against Defendant Defy Media.

### 3. Fourth *Eitel* Factor: The Sum of Money at Stake Weighs in Favor of Default Judgment

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Stated otherwise, the Court is required to assess whether the recovery sought is proportional to the harm caused by Defy Media's conduct. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, Plaintiffs seek $100,000 in compensatory damages, equitable relief for the transfer of ownership of Generate assets, as well as $300,000 in punitive damages. (Mot. 9–10.) While the compensatory damages are proportional to the harm caused, the Court declines to award equitable relief and punitive damages for the reasons discussed below. Therefore, the fourth *Eitel* factor presents no barriers to default judgment in this case.

### 4. Fifth *Eitel* Factor: There is No Possibility of Disputed Fact

The fifth *Eitel* factor examines whether material facts are disputed. *Eitel*, 782

F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Television Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

Here, because Defy Media defaulted, Plaintiffs' facts supporting their claims are undisputed. Accordingly, the fifth *Eitel* factor favors entry of default judgment.

### 5. Sixth *Eitel* Factor: The Defendant's Default is Not Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defy Media's default was due to excusable neglect. *Eitel*, 782 F.2d at 1471–72.

Here, Defy Media was properly served through its registered agent according to Fed. R. Civ. P. 4(e) on November 27, 2018, and the Proof of Service was filed with the Court. (ECF No. 12.) Thus, the possibility of excusable neglect is remote. Accordingly, the sixth *Eitel* factor favors entry of default judgment.

### 6. Seventh *Eitel* Factor: Policy for Deciding on the Merits Does Not Preclude Default Judgment

Finally, the seventh *Eitel* factor reflects the policy that "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "a decision on the merits [is] impractical, if not impossible" when a defendant fails to answer the plaintiff's complaint. *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.

Here, a decision on the merits is not possible since Defy Media did not respond to the Complaint. Accordingly, the seventh *Eitel* factor favors entry of default judgment.

Since the *Eitel* factors weigh in favor of granting default judgment, Plaintiffs are entitled to default judgment against Defy Media.

### C. Relief Sought

Having determined that Plaintiffs are entitled to default judgment, the Court turns to Plaintiffs' measure of relief. As stated in Fed. R. Civ. P. 55(b), well-pleaded allegations in the complaint are taken as true, except for those allegations relating to

damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Therefore, while a party's default establishes its liability on sufficiently-pleaded claims, it does not establish the amount of damages. *Id.* Plaintiffs request: (1) $100,000 in compensatory damages; (2) ownership transfer of all of Generate's membership interests, assets, trademarks, email servers, internet domain names, and telephone numbers; and (3) $300,000 in punitive damages. (Mot. 9–10.) The Court addresses each request in turn.

### i. Compensatory Damages

In determining the compensatory damages that a plaintiff may recover, "[t]he aim is to put the injured party in as good a position as he or she would have been had performance been rendered as promised." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 848 (Ct. App. 2007).

Plaintiffs seek $100,000 in compensatory damages for fraud, breach of contract, and breach of good faith and fair dealing. The amount requested is reasonable in this instance. The evidence sufficiently demonstrates that Defy Media, through Defendants Diamond and Richman, promised to pay Plaintiffs increased compensation through the end of 2018, totaling at a minimum $100,000 in consideration for Plaintiffs' continued business relationship with Defy Media. (Compl. ¶ 16; Welker Decl. ¶ 10.) The Court finds that Plaintiffs are entitled to $100,000 in damages for their causes of action for fraud, breach of contract, and breach of good faith and fair dealing. Accordingly, the Court **AWARDS** Plaintiffs $100,000.

### ii. Specific Performance Requesting Transfer of Assets

Relief in default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Fed. R. Civ. P. 54(c); *see also Font v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). Here, Plaintiffs' Complaint do not request the transfer of Generate assets from Defy Media in their Complaint. (*See generally* Compl.) Moreover, Plaintiffs' request to transfer Generate assets is based on

statements made by Defendants that it had agreed to transfer those assets to Plaintiffs. (Rath Decl. ¶ 8; Welker Decl. ¶ 8.) However, nowhere does this fact appear in Plaintiffs' original complaint. (*See generally* Compl.)

Accordingly, Plaintiffs' asset transfer request is **DENIED**.

### iii. Punitive Damages

Under California law, punitive damages are permitted in an action for breach of an obligation not arising from contract. Cal. Civ. Code § 3294(a); *City of Hope Nat'l. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 392 (2008) (setting aside a jury award for punitive damages in a breach of contract claim). Punitive damages are specifically not available in breach of contract actions, even where a defendant's breach is willful, fraudulent, or in bad faith. *Walker v. Signal Cos., Inc.*, 84 Cal. App. 3d 982, 998 (1978).

Given that the crux of the instant dispute flows from a breach of an oral contract, punitive damages are not permitted under California Law. Moreover, even if the dispute was not grounded in an oral contract, the record is insufficient to support a punitive damage award per the factors set forth in *Neal v. Farmers Insurance Exchange*, 21 Cal. 3d 910 (1978). Accordingly, Plaintiffs' request for punitive damages is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment against Defendant Defy Media. (ECF No. 18.) The Court **AWARDS** Plaintiffs $100,000 in compensatory damages.

**IT IS SO ORDERED.**

July 12, 2019

                **OTIS D. WRIGHT, II**
                **UNITED STATES DISTRICT JUDGE**